IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

COURTNEY GUTIERREZ                                                                      PLAINTIFF

v.                                   Case No. 4:20-cv-4108

THE 1873 CLUB OF TEXARKANA;
CROSSTIES OF TEXARKANA, INC.;
CROSSTIES TEXARKANA HOLDINGS,
INC.; ALLISON MUNN; JOE GAY; and
RONALD LESLIE MUNN                                                                     DEFENDANTS

**ORDER**

Before the Court is Plaintiff's Motion for Costs and Attorneys' Fees. (ECF No. 31). Defendants responded. (ECF No. 33). Plaintiff replied. (ECF No. 34). The matter is ripe for consideration.

**I. BACKGROUND**

On December 15, 2020, Plaintiff filed this action, alleging that Defendants willfully violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201, et seq., by failing to pay her for all hours worked, including overtime. Defendants answered, denying liability.

On April 20, 2021, the parties filed their joint Rule 26(f) report. After that, the docket reflects no other activity in this case until October 8, 2021, when the parties filed a joint motion for referral to settlement conference. The Court granted that motion, and the conference was initially set for December 2, 2021. It was later cancelled and ultimately reset for March 18, 2022. The parties attended the settlement conference with the Honorable Mark E. Ford, United States Magistrate Judge for the Western District of Arkansas, and tentatively settled Plaintiff's claims as to liability damages only. They then moved for, and received, the Court's approval of their

settlement agreement. The Court dismissed Plaintiff's claims with prejudice, except to the extent that they involve attorneys' fees and costs. On that issue, the parties asked for thirty days to try to settle the issue of fees and costs. If they could not agree on fees and costs, Plaintiff would file a contested fee petition.

The parties could not agree, so Plaintiff has now filed her motion for attorneys' fees and costs. Defendants oppose the motion.

## II.  DISCUSSION

Plaintiff asks for an award of $14,017.25 in attorneys' fees and $1,062.00 in costs, for a total of $15,079.25. Defendants argue these amounts are unreasonable and should be reduced. The Court will separately address fees and costs.

**A. Attorneys' Fees**

Plaintiff asks for $14,017.25 in attorneys' fees. Defendants argue this amount is too much and should be reduced.

The FLSA contains a fee-shifting scheme that mandates an award of reasonable attorneys' fees to a prevailing plaintiff. *See* 29 U.S.C. § 216(b). The AMWA provides similarly. *See* Ark. Code Ann. § 11-4-218(a)(1)(B)(ii). There is no dispute that Plaintiff is a prevailing party in this case. The burden of proving reasonable attorneys' fees rests with Plaintiff, the fee applicant here. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). She must submit evidence supporting the hours worked and rates claimed. *Id.* at 433.

The starting point for determining attorneys' fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate.[1]  *Fish v. St.*

---

[1] The Court considers twelve factors when calculating the lodestar: (1) time and labor required; (2) novelty and difficulty of the questions; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience,

2

*Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). "[T]he lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546 (2010). "A reasonable fee is one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991).

Defendants argue that Plaintiff's requested attorneys' fees are not based on reasonable rates or a reasonable number of hours. The Court will separately determine reasonable rates and hours, and then will use them to calculate the lodestar.

**1. Reasonable Hourly Rates**

Plaintiff requests attorneys' fees for the work of five attorneys, a paralegal, and a student law clerk. For the attorneys, she seeks rates of $383.00 per hour for Josh Sanford; $300.00 per hour for Vanessa Kinney; $285.00 per hour for Krista Sheets; $190.00 per hour for Courtney Lowery; and $150.00 per hour for Samuel Brown. She seeks rates of $100.00 per hour for the paralegal and $75.00 per hour for the law clerk. Defendants argue these rates are excessive and should be reduced.

A "reasonable hourly rate" is the ordinary rate for similar work in the community where the case is litigated, which in this case is Texarkana, Arkansas. *See Miller v. Dugan*, 764 F.3d 826, 831 (8th Cir. 2014). Plaintiff offers no evidence of the prevailing rate in Texarkana for services like those performed in this case, but the Court can use its own experience and knowledge

---

reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3. For AMWA claims, the Court considers mostly identical factors outlined in *Chrisco v. Sun Industries, Inc.*, 304 Ark. 227, 229-30, 800 S.W.2d 717, 718-19 (1990).

3

of prevailing market rates to determine reasonableness. *See Warnock v. Archer*, 397 F.3d 1024 (8th Cir. 2005).

Plaintiff's attorneys are experienced in litigating wage and hour cases.[2] But this was not a novel or complicated case, and it did not require any special skill to do the services provided. Plaintiff alleged that she worked for Defendants for three months and was not properly paid minimum wage and overtime. After Defendants answered the complaint and the parties filed their joint Rule 26(f) report, the docket reflects that the case sat dormant until the parties asked to go to settlement conference, where they settled Plaintiff's claims as to liability in the amount of $6,400.00. No substantive issues were ever litigated and the joint motion for referral to settlement conference was the first motion filed in the case. The case was never certified as a class or collective action, and no other plaintiff joined or opted in. Apparently, Plaintiff sent initial discovery requests to Defendants, but then agreed that Defendants did not have to respond because settlement talks were already underway. Nothing indicates that this case was undesirable, that taking it precluded counsel's employment elsewhere, or that any time limitations were imposed. Plaintiff also offers no evidence of what her attorneys would customarily charge a traditional, fee-paying client.

Considering the above factors, all but one of Plaintiff's asserted rates exceed the prevailing market rate in Texarkana, Arkansas. Using the Court's knowledge of the Texarkana market, reasonable rates will be assessed as follows: $250.00 per hour for Mr. Sanford, $175.00 per hour for Ms. Kinney, $150.00 per hour for Ms. Sheets, $150.00 per hour for Ms. Lowery, $150.00 per hour for Mr. Brown, $75.00 per hour for the paralegal, and $25.00 per hour for the law clerk.

---

[2] Mr. Sanford provided a declaration in support of the fee request that, in part, outlined each attorney's overall experience and, for most, their specialization within his firm. (ECF No. 31-2, pp. 6-7).

4

### 2. Reasonable Number of Hours Worked

A fee applicant must make a "good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. However, counsel's submission of hours is not conclusive, and the Court must exclude any time that was not reasonably expended on the litigation. *Id.* at 433-34. The Court has "substantial discretion in deciding the number of hours to be awarded" for a contested fee petition like this one. *Dean v. Bradford Ests., LLC*, No. 4:19-cv-0748-BSM, 2020 WL 8642227, at *1 (E.D. Ark. Nov. 24, 2020).

Plaintiff seeks fees for 51.85 total hours of work: 31.9 hours by Krista Sheets, 7.25 hours by Josh Sanford, 3.3 hours by Vanessa Kinney, 2.6 hours by Courtney Lowery, 0.9 hours by Samuel Brown, 3.5 hours by the paralegal, and 2.4 hours by the law clerk. Plaintiff states that her attorneys and their support staff originally billed 77.25 hours for a total of $20,611.95, but then performed a self-audit and reduced those amounts to 51.85 and $14,017.25, respectively. Despite that, the bulk of Defendants' objections argue that more cuts are necessary.

#### i. Excessive Entries

Defendants suggest that the use of seven timekeepers—five attorneys, a paralegal, and a law clerk—is generally excessive for this straightforward FLSA case, especially given that it settled relatively easily. The use of multiple attorneys on a case is not *per se* unreasonable. In some cases, it can "be more efficient and lead to a reduction in the total number of hours worked." *Franklin v. Magnolia Flooring Mill, LLC*, No. 1:17-cv-1073-SOH, 2019 WL 2427952, at *4 (W.D. Ark. June 10, 2019). This can certainly be true if specialist lawyers are the sole contributors to discreet subparts of the case that align with their area of expertise, allowing them to do that work more efficiently than a generalist lawyer. But a problem arises if too many lawyers unreasonably bill work for certain tasks, especially in a routine case like this one. *See Oden v. Shane Smith*

*Enters., Inc.*, 27 F.4th 631, 632 (8th Cir. 2022) (noting Plaintiff's counsel's history of "over-staffing cases, micro-managing associates, billing attorneys' rates for administrative tasks, and failing to self-audit records that are submitted to the court for reimbursement"). The Court will not make a blanket reduction because multiple timekeepers worked on this case, but rather will reduce specific instances of unnecessary or duplicative billing.

Next, Defendants take issue with the fact that three attorneys billed time in connection with this case's complaint. Ms. Lowery billed 2.10 hours on December 15, 2020, for among other things, preparing and drafting the complaint and summons, conferencing with Mr. Sanford regarding the complaint and the defendants' identities, and then editing the complaint. That same day, Mr. Sanford billed 0.3 hours conferencing with Ms. Lowery about the complaint and the defendants' identities, and 0.25 hours editing and revising the complaint.

Mr. Sanford's entries that day were unnecessary. In his declaration, he states that Ms. Lowery is an "expert in screening and drafting FLSA claims" and that she specializes in drafting wage and hour complaints, making her the most efficient choice for that task. (ECF No. 31-2, pp. 7, 15). He represents that in 2020, "no attorney in the United States drafted more FLSA lawsuits than Ms. Lowery." (ECF No. 31-2, p. 7). If that is true, it was unnecessary for Mr. Sanford to conference with her about the complaint and then edit her work product afterwards. *Cf. Rorie v. WSP2, LLC*, No. 5:20-cv-5106-CDC, 2021 WL 4900992, at *4 (W.D. Ark. Oct. 20, 2021) ("Mr. Sanford simultaneously asks this Court to recognize SLF lawyers as 'experts' in the FLSA field for whom higher than average hourly rates are appropriate but then asks the Court to award fees for his micromanagement of these lawyers."). Nothing stops Mr. Sanford from personally overseeing the work done by a specialist attorney at his firm, but Defendants do not have to pay for it. *See Oden v. Shane Smith Enters.*, No. 4:19-cv-0693-BRW, 2020 WL 8073626, at *2 (E.D.

6

Ark. Dec. 16, 2020) ("SLF certainly can engage in a 'collaborative approach' involving constant oversight by a senior lawyer, but it cannot expect (nor should it ask) Defendant[s] to pay for the practice."). The Court will subtract 0.55 hours from Mr. Sanford's total.

For the same reasons, it was unnecessary for Ms. Lowery to conference with Mr. Sanford about the complaint, purportedly her area of expertise. Ms. Lowery block-billed her entry on December 15, 2020, making it difficult to tell from that entry how much time she spent on conferences. The Court will subtract 0.3 hours from Ms. Lowery's time, matching the amount of time Mr. Sanford billed for the same conferences.

Ms. Sheets, the primary attorney on this case, billed 1.9 hours on December 28, 2020, for reviewing the then-filed complaint and prior correspondence between Plaintiff and Defendants. Defendants do not have to pay for Plaintiff's attorneys reading filings created by their co-counsel. *See id.* at *3 (excluding time billed for reviewing co-counsel's filings). Because Ms. Sheets block-billed her entry on December 28, 2020, the Court cannot tell how she split her time between reviewing the complaint and reviewing Plaintiff's prior correspondence with Defendants. The Court will reduce Ms. Sheets' time by 0.5 hours.

Defendants take a similar issue with the fact that two attorneys and the paralegal billed time for editing and reviewing the settlement agreement, which was originally drafted by defense counsel. The Court agrees that this is excessive.

Mr. Sanford's declaration states that Mr. Brown's practice focuses on wage and hour settlement and that he finalizes several settlements per week, making his involvement in settlement matters "efficient and highly beneficial." (ECF No. 31-2, pp. 7, 15). However, the paralegal billed the most time on the settlement agreement, billing 0.6 hours on April 13, 2022, for editing and revising it. (ECF No. 31-1, p. 15). Mr. Brown billed 0.2 hours on May 3, 2022, for reviewing

edits to the settlement agreement made by defense counsel and for corresponding with them regarding the same. There is nothing unreasonable about the paralegal acting as the primary editor on the settlement agreement or about Mr. Brown communicating with opposing counsel about edits made to the agreement.

However, Ms. Sheets also billed time on the settlement agreement. She billed 0.2 combined hours on April 18 and 21, 2022, for examining the settlement agreement, and billed another 0.2 combined hours on April 18 and 20, 2022, for conferencing with Mr. Brown about the settlement terms. It is unclear why Ms. Sheets examined the paralegal's edits to the settlement agreement and later conferenced with Mr. Brown about those edits. Much like how Ms. Lowery was the specialist who drafted the complaint, Mr. Brown is purportedly the specialist whose role was to finalize the settlement. Thus, if an attorney needed to review the settlement agreement, he should have done it. Nothing prevents Ms. Sheets from reviewing the subparts of a case that specialists work on, but Defendants do not have to pay for it. *Cf. Murdock v. McNair*, No. 5:17-cv-5225-TLB, 2018 WL 6314569, at *1 (W.D. Ark. Dec. 3, 2018) (holding that defendants do not have to pay for time spent mentoring other attorneys); *Burchell v. Green Cab Co., Inc.*, No. 5:15-cv-5076-PKH, 2016 WL 894825, at *3 (W.D. Ark. Mar. 8, 2016) (cutting time billed for "oversight and, to some extent, education" of a lawyer). 0.4 hours will be subtracted from Ms. Sheets' time.

Defendants also ask for reduction of multiple instances where Mr. Sanford and Ms. Sheets both billed time for examining and/or reading the same court orders or CM/ECF notifications. (ECF No. 33, pp. 9-10). It was unnecessary for Mr. Sanford to bill for reading orders that were or should have been read by Ms. Sheets—the lead attorney—given the case's straightforward nature and the small amount of substantive work done on it. *See Oden*, 2020 WL 8073626, at *2 (cutting time billed for a "'collaborative approach' involving constant oversight by a senior lawyer"), *aff'd*

*sub nom. Oden*, 27 F.4th 631.  The following numbered entries from Mr. Sanford on the billing spreadsheet will be cut as duplicative and/or unnecessary:  100, 112, 135, 232, 243, 305, 314, 364, 412, 460, 475, 493, 507.  1.3 hours will be subtracted from Mr. Sanford's time.

      For similar reasons, the Court also cuts multiple billed entries from Mr. Sanford for "examination" of various emails and inter-office memoranda.  Billing for "examination" of a document is too vague for the Court to tell whether the action was necessary.  *See Rorie*, 2021 WL 4900992, at *4 (speaking unfavorably of the practice of billing for "examining" documents and excluding the same).  It also implies that Mr. Sanford was not a participant in the examined email exchanges, because he billed multiple other entries for "receive, read and prepare response to" emails.  A fee-paying client would not reasonably pay for a firm's senior partner to read emails that were sent or received by junior attorneys.  *See Oden*, 2020 WL 8073626, at *2 (cutting time billed for a "'collaborative approach' involving constant oversight by a senior lawyer").  The following numbered entries from Mr. Sanford on the billing spreadsheet will be cut as duplicative and/or unnecessary:  11, 13, 43, 61, 62, 112, 159, 174, 205, 257, 270, 310, 339, 342, 343, 355, 360, 366.  1.8 hours will be subtracted from Mr. Sanford's time.

      Moving to another issue, Ms. Sheets appears to have billed twice for reading the same order.  On May 18, 2022, she billed 0.1 hour for examining the Court's order lifting the trial setting.  On May 20, 2022, she again billed 0.1 hour for examining the order lifting the trial setting.  A fee-paying client would not pay for an attorney to read the same order twice.  The second billing entry will be cut, and 0.1 hour will be subtracted from Ms. Sheets' time.

      Finally, the Court must cut several billing entries involving unexplained acronyms.  On December 11, 2020, Mr. Sanford billed 0.1 hour for "Examination of NOA-Banes."  On March 10, 2022, Ms. Sheets billed 0.1 hour for "Conference with ZB re: NOA."  That same day, the

9

paralegal billed 0.4 hours for "Preparation and drafting of NOA." On March 14, 2022, Mr. Sanford billed 0.1 hour for "Examination of NOA-KS." The Court does not know what "NOA" refers to, what significance it has in this case, or if it is even related to this case. Nothing in Plaintiff's motion, supporting brief, or exhibits explains what "NOA" is.[3] Thus, the Court finds these entries unnecessary and will cut all time related to them. The Court will subtract 0.2 hours from Mr. Sanford's time, 0.4 hours from the paralegal, and 0.1 hour from Ms. Sheets. A similar cut will be made for Mr. Sanford's billing entry for "Examination of JNOS" on March 21, 2022. That acronym and its relevance to this case are not explained, so its associated billing entry is therefore unnecessary. 0.1 hour will be subtracted from Mr. Sanford's time.

### ii. In-House Communication

Defendants take issue with there being sixty-seven billing entries categorized as "In House Communication." They argue this is excessive and should be significantly reduced. Plaintiff argues that frequent intra-firm communication, often through conferencing, allows for more efficient work because lawyers can share information and knowledge with one another, thereby saving time for the lawyer doing the work. Plaintiff also states that her counsel pre-emptively excluded the in-house communication billables for all timekeepers except Mr. Sanford and Ms. Sheets.

Plaintiff's counsel have repeatedly been admonished for excessive intra-office communication. *See, e.g.*, *Huffman v. Associated Mgmt. Ltd.*, No. 4:20-cv-1296-BRW, 2021 WL 3122338, at *5 (E.D. Ark. July 22, 2021) (outlining multiple federal courts' examination and criticism of Plaintiff's counsel's billing practices), *aff'd*, No. 21-2859, 2022 WL 1114631 (8th Cir. Apr. 14, 2022). The Court appreciates that counsel excluded all billing entries for intra-office

---

[3] Notably, Mr. Sanford's supporting declaration defines at least one acronym used in the billing spreadsheet. (ECF No. 31-2, p. 11).

10

communications other than those from Mr. Sanford and Ms. Sheets. However, even those entries are excessive for a case as straightforward as this one.

Mr. Sanford and Ms. Sheets billed a combined 7.4 hours for in-house communication. Some of those billings have already been addressed in the previous section or will be addressed in subsequent sections. What remains here are the billing entries for conferencing.

Mr. Sanford billed twice for intra-firm conferences, for a total of 0.4 hours. (ECF No. 31-1, pp. 1, 8). On December 8, 2020, he billed 0.3 hours for a conference with someone designated by the initials "AS" about "merits, facts, defenses." Then, on September 8, 2021, he billed 0.1 hour for a conference with someone with the initials "KS," presumably Ms. Sheets, about "damages; call with OC."

The Court will allow the first conference but not the second. Throughout the case, Ms. Sheets was the sole biller for all other conferences she had with Mr. Sanford, so it is unclear why she did not bill for the September 8, 2021, conference instead of him. Given that their other conferences were billed for only by Ms. Sheets, a traditional fee-paying client would likely not agree to pay for that instance being billed for by Mr. Sanford at a much higher hourly rate. *Cf. Huffman*, 2021 WL 3122338, at *6 (cutting the higher rate for time billed for activities performed by two lawyers), *aff'd*, 2022 WL 1114631. 0.1 hour will be subtracted from Mr. Sanford's total.

That leaves Ms. Sheets, who was the primary biller for intra-firm conferences. She billed forty-five times for conferences, for a total of 4.7 hours. Again, some of those billings are addressed elsewhere in this order. But for the remaining entries, a small reduction is necessary to eliminate redundancies and excessiveness, given that this was a simple case involving one client. 0.5 hours will be subtracted from Ms. Sheets' time.

### iii. Discovery

Plaintiff's counsel and their staff billed a total of 4.1 hours on discovery. On August 9, 2021, a law clerk billed 1.3 hours for preparing discovery requests. That day and the next, Ms. Sheets billed 0.6 hours for revising and conferencing about those discovery requests. On August 11, 2021, the law clerk billed 1.1 hours for preparing more discovery requests, and Ms. Sheets billed 0.6 hours later that day for revising and conferencing about them.

On September 9, 2021, Ms. Sheets billed 0.1 hour for receiving and responding to an email from Defendants' counsel about an extension of time to respond to discovery. From November 15, 2021, through January 14, 2022, Ms. Sheets billed four entries at a combined 0.4 hours for conferencing about the discovery deadline. On January 11, 2022, the paralegal billed 0.3 hours for drafting Plaintiff's supplemental disclosures. Over the next few days, Ms. Sheets billed a total of 0.3 hours for conferencing about the supplemental disclosures, and the paralegal billed 0.2 hours for drafting an email to Defendants' counsel about the same.

Defendants argue that the time Plaintiffs' counsel billed on discovery was unnecessary, given that the case settled without the use of formal discovery. The Court disagrees.

The discovery period formally began on April 20, 2021, when the parties filed their joint Rule 26(f) report. The discovery deadline passed on January 16, 2022. The parties first asked to go to settlement conference on October 8, 2021. The settlement conference was originally set for December 2, 2021, but it was eventually rescheduled for March 18, 2022.

Had Plaintiff's counsel or staff billed for discovery after the case settled at the settlement conference, or even after the discovery period ended, it would have been unnecessary. But that did not happen here. All discovery-related billing entries occurred during the discovery period. There is nothing unreasonable about Plaintiff's counsel preparing initial discovery requests or

supplemental disclosures and serving them on Defendants before the case settled and while the discovery period was still open.[4] No reduction in time is warranted for the discovery-related entries.

### iv. Client Communication

Plaintiff's billing spreadsheet has thirty-eight entries—mostly categorized as client communication and billed by Ms. Sheets—the substance of each is described as "ATTORNEY-CLIENT PRIVILEGE." Defendants argue that these entries are too vague to show that these entries were necessary, and thus, they should all be removed.

On July 6, 2022, the Court ordered Plaintiff to provide these billing entries in unredacted form for *in camera* review. Plaintiff did so on July 12, 2022. To avoid any issue with confidentiality, the Court will not discuss the specifics of these entries.[5] However, the Court has reviewed all unredacted "ATTORNEY-CLIENT PRIVILEGE" entries. A slight reduction is necessary to eliminate excessive client communication. 0.5 hours will be subtracted from Ms. Sheets' time.

### v. Settlement Conference

Defendants argue that Ms. Sheets and Mr. Sanford billed redundantly for the settlement conference.

---

[4] The discovery deadline passed roughly two months before the parties attended the settlement conference and the parties never asked for an extension of that deadline. It is unclear how the parties intended to address discovery if they had not settled at the settlement conference. Regardless, whatever informal agreement the parties had about Defendants not needing to respond to propounded discovery requests before attending the settlement conference had no impact on the discovery obligations set by the Court's Final Scheduling Order.

[5] A few of the entries perhaps should not have been redacted on the billing spreadsheet based on attorney-client privilege. The descriptions of some redacted entries have a similar level of detail as other unredacted "client communication" entries on the billing spreadsheet, like Ms. Sheets' unredacted billing entries 191 and 198 regarding emails to Plaintiff "re: case status" and "re: update," or her unredacted billing entry 296 for a phone call to Plaintiff "re: MJSC cancelled." (ECF No. 31-1, pp. 7, 11).

Ms. Sheets billed an hour on December 2, 2021, preparing for the settlement conference. However, the settlement conference was cancelled on December 2, 2021, transferred to a new magistrate judge, rescheduled for February 3, 2022, cancelled again, and ultimately reset for March 18, 2022. On March 17, 2022, Ms. Sheets billed 1.1 hours preparing for the settlement conference. Defendants appear to argue that the March 17, 2022, billing entry was redundant and should be excluded. The Court disagrees. Ms. Sheets spent an hour preparing for the initial settlement conference, which was cancelled the day it was set to occur. Three months later, she spent a similar amount of time preparing for the rescheduled conference. That is not unreasonable given the length of time that had passed. Those billing entries will not be reduced.

Defendants also take issue with Ms. Sheets billing 3.9 hours for "[t]ravel time and attendance at Court for settlement conference (Zoom)." (ECF No. 31-1, p. 14). They argue that the settlement conference was held virtually, so it is unreasonable to bill for time spent on travel. Plaintiff contends that this entry was just boilerplate language that was not adjusted to account for the fact that no travel occurred. Obviously, Defendants would not be required to pay for travel time billed in connection with a virtual settlement conference. Defendants provide no evidence that this occurred, though, so the Court will not reduce the time entry.

Finally, Defendants point out that Mr. Sanford billed 0.2 hours receiving and responding to emails from Ms. Sheets about the progress of the settlement conference as it was occurring. They argue that this communication was unnecessary and should be cut. This time will be allowed because it is brief.

### vi. Fee Petition

Vanessa Kinney, who Mr. Sanford describes as having "extensive briefing experience, especially in preparing fee petitions," (ECF No. 31-2, p. 15) billed 3.3 total hours in connection

with the instant fee petition. On June 11, 2022, she billed 1.4 hours for downloading "billing," formatting the billing spreadsheet, and categorizing billing entries. On June 12, 2022, she billed 1.5 hours for drafting the fee petition and the supporting brief and declaration. Later that day, she billed 0.4 hours for editing and revising the same.

Defendants argue this time is excessive, given that the petition is similar in form and substance to fee petitions submitted in other cases by the same counsel. Defendants also argue that duplicative billings for reviewing the petition must be removed.

1.9 hours is not too long to draft and edit the fee petition and supporting brief. *See Huffman* 2021 WL 3122338, at *6 (stating it "should take a[n] hour or two" to draft an FLSA fee petition). There are no instances on the billing spreadsheet (ECF No. 31-1, pp. 17-18) of anyone else reviewing or editing the fee petition, so no reductions are required on that basis.

However, the Court will cut the 1.4 hours Ms. Kinney billed for downloading billing data, creating the billing spreadsheet, and categorizing the billing entries on it. Although the billing spreadsheet is helpful to the Court here, its creation is non-legal clerical work that cannot be passed onto Defendants in a fee-shifting award. *See Shrader v. OMC Aluminum Boat Group, Inc.*, 128 F.3d 1218, 1222 (8th Cir. 1997) (stating that clerical work is not compensable in a fee-shifting award); *Rorie* 2021 WL 4900992, at *4 (describing the preparation of FLSA billing spreadsheets as clerical work); *Hill-Smith v. Silver Dollar Cabaret, Inc.*, No. 5:20-cv-5051-TLB, 2020 WL 4741917, at *3 n.3 (W.D. Ark. Aug. 14, 2020) (same). 1.4 hours will be subtracted from Ms. Kinney's total.

### 3. Lodestar Calculation and Adjustment

Using the above-determined reasonable rates and hours, the lodestar is calculated as follows:

| Billed By | Reasonable Hourly Rate | Reasonable Hours Worked | Value |
|---|---|---|---|
| Josh Sanford | $250 | 3.20 | $800.00 |
| Vanessa Kinney | $175 | 1.90 | $332.50 |
| Krista Sheets | $150 | 29.80 | $4,470.00 |
| Samuel Brown | $150 | 0.90 | $135.00 |
| Courtney Lowery | $150 | 2.30 | $345.00 |
| Law Clerk | $25 | 2.40 | $60.00 |
| Paralegal | $75 | 3.10 | $232.50 |
| Total | | 43.50 | $6,375.00 |

The Court can adjust the lodestar amount "in extraordinary circumstances," but "there is a strong presumption that the lodestar is sufficient." *Perdue*, 559 U.S. at 546. To determine whether extraordinary circumstances exist, the Court considers whether other factors suggest upward or downward adjustment of the lodestar amount. *Hensley*, 461 U.S. at 434. In doing so, the Court considers the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1964).[6] *See Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001). The Court need only address any factors that warrant explicit consideration. *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997-98 (8th Cir. 1999).

As previously discussed, this was a straightforward wage and hour case that was settled without the parties conducting any meaningful discovery or motion practice. Any *Johnson* factor

---

[6] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19. Most of these factors are covered in the initial lodestar calculation. *Hensley*, 461 U.S. at 434.

relevant here has already been covered above when determining the lodestar. Thus, the lodestar represents an appropriate amount for this routine case and no further adjustment is necessary. Plaintiff will be awarded reasonable attorneys' fees of $6,375.00.

### B. Costs

The FLSA and AMWA also allow for reasonable costs to be paid to a prevailing plaintiff. *See* 29 U.S.C. § 216(b); Ark. Code Ann. § 11-4-218(a)(1)(B)(ii); *see also* Fed. R. Civ. P. 54(d) (stating costs taxable under 28 U.S.C. § 1920 should be awarded to a prevailing party unless a statute, rule, or court order says otherwise). Plaintiff spent $402.00 on this case's filing fee and $660.00 to hire a private process server. She asks to recover each, for a total of $1,062.00. Defendants have no problem with the $402.00 filing fee but argue that the use of a private process server cannot be recovered as costs.

Recovery of the filing fee is proper and will be allowed. As for the process-server costs, Defendants are right that expenses for using a private process server are not contemplated by 28 U.S.C. § 1920, and normally cannot be recovered as costs by a prevailing party under Rule 54(d). *See Crues v. KFC Corp.*, 768 F.2d 230, 234 (8th Cir. 1985). But "[i]n FLSA cases, costs are not limited to the categories set forth in § 1920 for prevailing parties." *Koenig v. Bourdeau Const. LLC*, No. 4:13-cv-0477-SNLJ, 2014 WL 6686642, at *5 (E.D. Mo. Nov. 26, 2014). The Eighth Circuit has interpreted other fee-shifting statutes as going beyond section 1920 and allowing an award of all "reasonable out-of-pocket expenses" that would normally be charged to a fee-paying client. *See Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1036 (8th Cir. 2008) (affirming in a Title VII case an award of costs that would not be allowed under 28 U.S.C. §1920). Courts have extended that rationale to FLSA cases and "routinely grant[]" requests for "[r]eimbursement for

17

reasonably incurred out-of-pocket expenses." *See, e.g.*, *Harris*, 2018 WL 617972, at *14 (D. Minn. Jan. 29, 2018). The Court does so here.

Section 1920 aside, Defendants do not argue that the use of a private process server was unnecessary or unreasonable in this case. The private process server costs will be allowed. Plaintiff will be awarded reasonable costs of $1,062.00.

### III. CONCLUSION

For the above-stated reasons, Plaintiff's motion for attorneys' fees and costs (ECF No. 31) is hereby **GRANTED IN PART AND DENIED IN PART**.[7] Plaintiff is awarded $6,375.00 in reasonable attorneys' fees and $1,062.00 in reasonable costs, for a total of $7,437.00. These fees and costs shall be paid pursuant to the six-month installment plan in the parties' settlement agreement.

No other issues remain, so the Clerk of Court is **DIRECTED** to close this case. The Court retains jurisdiction to vacate this order upon cause shown that the settlement has not been completed and further litigation is necessary.

**IT IS SO ORDERED**, this 22nd day of July, 2022.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[7] Plaintiff requested a hearing on the instant motion, which has been fully briefed. The parties had a full and fair opportunity to provide any argument and evidence relevant to the motion. The Court does not believe that a hearing would aid in its understanding of the facts or in its determination of the legal issues presented. Accordingly, the request for a hearing is **DENIED**.